UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMIE ANGLEMYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-CV-167 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Jamie Anglemyer applied for social security disability benefits, arguing that his various physical and mental conditions combined to prevent him from maintaining any employment. However, an administrative law judge found that he retained the capacity to perform jobs that exist in significant numbers, so the Commissioner denied his application. The administrative law judge wrote a thorough and detailed decision, but the Court finds that the decision failed to adequately address the effects of Mr. Anglemyer's limitations in concentration, persistence, and pace. Accordingly, the Court reverses and remands for further proceedings.

## I. FACTUAL BACKGROUND

Jamie Anglemyer worked for a number of years as a welder. However, he has not worked since 2008, and he claims that his various health conditions leave him unable to work, so he applied for social security disability benefits. The ALJ in this case found that he had multiple severe impairments, including "obesity; history of left lower extremity arterial occlusion; history of a seizure disorder; degenerative disc disease; sleep apnea; mild arthritis of the right hand; depression, and a personality disorder." (R. 13). The ALJ further found that he suffered from diabetes and chronic obstructive pulmonary disease, but that those conditions did not cause

severe impairments. At the step three analysis, the ALJ discussed at length whether Mr. Anglemyer met the criteria of listing 12.04 for affective disorders. She found that Mr. Anglemyer had "moderate" but not "marked" difficulties in each of his activities of daily living, his social functioning, and his concentration, persistence, and pace, so he did not meet or equal the listing.

The ALJ therefore proceeded to evaluate Mr. Anglemyer's residual functional capacity. She found that he was capable of performing sedentary work, with a variety of postural and environmental limitations. She further found that, because of his limitations in social functioning and concentration, persistence, and pace, Mr. Anglemyer would be limited to performing "unskilled," "low stress" work with only superficial interaction with coworkers, supervisors, and the public, but that he "is able to sustain and attend to task throughout the eight-hour workday." (R. 18). Based on the testimony of a vocational expert, who was presented a series of hypotheticals that included progressively more serious limitations, the ALJ found that Mr. Anglemyer would be unable to perform his past work, but that he could work as a "sorter," "table worker," or "assembler." Accordingly, she found that he did not qualify as disabled under the Social Security Act. The Appeals Council denied Mr. Anglemyer's request for review, making the ALJ's decision the final decision of the Commissioner. Mr. Anglemyer therefore filed this action seeking review of that decision.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Anglemyer presents a number of arguments in seeking reversal of the Commissioner's decision. Relative to his mental limitations, he argues that the ALJ failed to properly address the opinions of his treating psychiatrist and a consultative examiner, and that those opinions could have affected the ALJ's listing analysis at step three or the RFC analysis at step five, particularly by supporting more severe limitations in concentration, persistence, and pace. He also argues that, even accepting the ALJ's findings as to his concentration, persistence, and pace, the RFC that the ALJ adopted failed to account for those limitations. Finally, as to his physical limitations, Mr. Anglemyer argues that the ALJ failed to give adequate reasons for discounting the opinions of two doctors. For the following reasons, the Court finds that the ALJ erred with respect to Mr. Anglemyer's limitations in concentration, persistence, and pace, both in failing to account for those limitations in the RFC, and in failing to address an opinion on that topic by Mr. Anglemyer's treating physician. Because remand is required on that basis, the Court does not address Mr. Anglemyer's remaining arguments, though he is free to raise them on remand.

"As a general rule, both the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (internal citations omitted). Here, the ALJ found at step three that Mr. Anglemyer had "moderate" difficulties in maintaining concentration, persistence, and pace. She reiterated that finding in her RFC analysis, again finding that he had "moderate difficulty with maintaining concentration, persistence, or pace." (R. 19). Accordingly, she was required to account for those limitations in formulating Mr. Anglemyer's RFC.

The ALJ began on the right foot by noting that one cause of Mr. Anglemyer's difficulties in this respect was that he "would probably become angry if criticized and was poor at listening to instructions." (R. 19). The Seventh Circuit has held that one way to account for a claimant's difficulties in concentration, persistence, and pace is to exclude the sorts of positions that are likely to trigger those difficulties for a particular claimant. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002). Thus, the ALJ limited Mr. Anglemyer to "low stress work" that would involve "simple, routine, and repetitive tasks." (R. 18–19). Since the instructions for those positions would be "simple and easy to follow," (R. 19), this limitation would exclude this particular trigger for Mr. Anglemyer's difficulties in concentration, persistence, and pace.

The ALJ continued, however, and noted that Mr. Anglemyer also suffered from depression and from sleep apnea, and that both of those conditions "had an impact on [Mr. Anglemyer's] energy level and ability to sustain concentration and pace." (R. 19). Unfortunately, the ALJ never proceeded to account for those limitations in Mr. Anglemyer's RFC or to explain why no such limitations were warranted. The RFC did limit Mr. Anglemyer to performing low-stress, unskilled work, with limited interactions with others, as just discussed, but those limitations do not necessarily correlate with his deficiencies in concentration, persistence, and pace—the Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858–59; *O'Connor-Spinner*, 627 F.3d at 620 ("In most cases, . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [vocational expert's]

6

consideration those positions that present significant problems of concentration, persistence and pace.").

The Seventh Circuit addressed an RFC similar to the one here in *Varga*, where the claimant likewise had moderate difficulties in maintaining concentration, persistence, and pace. *Varga*, 794 F.3d at 814–15. There, the RFC limited the claimant to performing "simple, routine, and repetitive tasks," with limited interaction with coworkers or supervisors and few if any workplace changes. *Id.* The Seventh Circuit held that these limitations failed to adequately address the claimant's difficulties, as limiting the complexity of a task does not address an individual's ability to continue performing the task over an extended period of time, and the latter limitations dealt "largely with workplace adaptation, rather than concentration, pace, or persistence." *Id.*; *see also O'Connor-Spinner*, 627 F.3d at 620 ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."). The same is true here.

In defending the ALJ's decision, the Commissioner does not dispute that analysis. Instead, she argues that in adopting this RFC, the ALJ relied on the opinions of the state agency reviewing psychologists to translate Mr. Anglemyer's difficulties in concentration, persistence, and pace into these functional limitations. However, the ALJ's decision does not show that she actually relied on the agency psychologists in that respect. The ALJ's decision only cites the agency psychologists' reports during its step-three analysis, in support of the ALJ's finding that Mr. Anglemyer had "moderate difficulty with concentration, persistence, and pace." (R. 16). But finding that an individual has moderate difficulties in those areas is a separate issue from determining what effect those difficulties have on an individual's RFC, as just discussed. The ALJ's decision does not indicate that she relied on the agency psychologists' opinions in that

7

latter respect, and the Court cannot affirm the Commissioner's decision for reasons not provided by the ALJ, *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), so the Court cannot find that the ALJ's decision was justified on that basis.

This error is further exacerbated by the ALJ's failure to acknowledge an opinion on this particular issue by Mr. Anglemyer's treating psychiatrist, Dr. Ali. In December 2012, Dr. Ali completed a Report of Psychiatric Status form prepared by the Social Security Administration, which sought a variety of information on Mr. Anglemyer's conditions and limitations. One of the questions asked Dr. Ali to describe Mr. Anglemyer's "ability to attend to a simple work routine on a consistent basis." (R. 719). Dr. Ali responded: "Would not be able to do mindless task repeatedly. Would fall asleep or become angry." *Id.* This opinion rebuts any suggestion that Mr. Anglemyer's difficulties with concentration, persistence, and pace are alleviated by performing unskilled work, and indicates that such work would actually amplify those difficulties. This opinion also directly contradicted the ALJ's finding that Mr. Anglemyer "can perform simple, routine, and repetitive tasks consistent with unskilled work and is able to sustain and attend to task throughout the eight-hour workday." (R. 18).

However, the ALJ's decision did not acknowledge or address this particular opinion by Dr. Ali. The Commissioner argues that an ALJ need not provide a written evaluation of every piece of evidence in the record, *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), and that the ALJ did address other opinions by Dr. Ali in this same form. However, as an opinion from Mr. Anglemyer's treating doctor that directly contradicted the RFC finding, this opinion did warrant acknowledgment, and the ALJ was required to provide a "good reason" before discounting it. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The Commissioner also argues that other parts of the ALJ's decision show that the ALJ must have discounted this opinion as inconsistent with

other evidence. In particular, she argues that the ALJ also noted that Mr. Anglemyer's examinations in early 2013 were within normal limits, and that his Global Assessment of Functioning scores were in the 50s. (R. 16–17, 19). Again, however, the ALJ's decision itself does not show that the ALJ actually relied on that evidence to discount this opinion by Dr. Ali. Rather, the ALJ cited that evidence in support of her conclusion that Mr. Anglemyer's difficulties with concentration, persistence, and pace were "no more than moderate," *id.*, but as discussed above, even moderate difficulties in those areas must be accounted for in an individual's RFC. Accordingly, the Court cannot find that any oversight in that respect is harmless.

The Court therefore finds that a remand is required for the ALJ to revisit the effect that Mr. Anglemyer's difficulties with concentration, persistence, and pace would have on his RFC. Because remand is required on that basis, the Court does not address Mr. Anglemyer's additional arguments relative to the ALJ's listing analysis or her handling of the other opinion evidence, though the parties are free to take up those matters on remand.[1] Finally, the conclusion of Mr. Anglemyer's brief seeks an outright award of benefits. However, that request is waived, as it was not raised or developed in the body of the brief, and it is also unwarranted, as the record is not so one-sided as to compel a finding that he is disabled.

## IV. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

---

[1] One point is worth noting, though. The ALJ stated that Mr. Anglemyer's GAF scores of 50 and 55 suggested "no more than moderate" difficulties. (R. 19; *see also* R. 15). Mr. Anglemyer argues that, while scores of 51–60 represent "moderate" symptoms, scores or 50 or less represent "serious" symptoms. If true, it would be appropriate for the ALJ to acknowledge that distinction in order to avoid an appearance that she misconstrued the evidence.

9

SO ORDERED.

ENTERED: August 15, 2017

                                                      /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court